## UNITED STATES

v.

**Private (E–2) Jerome L. HOOKS, 369–62–3062, US Army, 4th Aviation Company, 4th Infantry Division (Mechanized) Support Command, 4th Infantry Division (Mechanized), Fort Carson, Colorado.**

CM 432633.

U. S. Army Court of Military Review.

Sentenced Adjudged 29 October 1974.

Decided 5 Feb. 1976.

Appearances: Appellate counsel for the Accused: CPT Claud H. Drinnen, JAGC; CPT Robert C. Mueller, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC. Appellate counsel for the United States: CPT Clement L. Hyland, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

BAILEY, Senior Judge:

Consistent with his pleas, the appellant stands convicted of four specifications of larceny and four specifications of housebreaking in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930. He was sentenced to a bad-conduct discharge, confinement at hard labor for three years, forfeiture of $250.00 pay per month for thirty-six months, and reduction to the grade of Private E–1. The convening authority approved the sentence but that portion of the sentence adjudging confinement at hard labor in excess of fifteen months was suspended until 1 July 1976.

The following error has been assigned by appellate defense counsel:

THE APPROVED SENTENCE IN APPELLANT'S CASE IS ILLEGALLY EXCESSIVE BECAUSE THE COURT–MARTIAL TO WHICH APPELLANT'S CASE WAS PROPERLY REFERRED AND UNDER WHICH IT WAS PROPERLY TRIED WAS A SPECIAL COURT–MARTIAL AND WAS THEREFORE WITHOUT JURISDICTION TO ADJUDGE A SENTENCE WHICH INCLUDED CONFINEMENT IN EXCESS OF SIX MONTHS AND FORFEITURES IN EXCESS OF TWO–THIRDS PAY PER MONTH FOR SIX MONTHS.

A study of certain facts surrounding the reference to trial may be helpful in placing the issue in proper perspective. On 27 September 1974, the pretrial advice pertaining to the charges against the appellant was submitted to the convening authority, wherein the staff judge advocate recommended trial by general court-martial. On 1 October 1974, Brigadier General David E. Grange, who at the time was Acting Commander of Fort Carson and the 4th Infantry Division, as convening authority, directed trial be general court-martial. Examination of the charge sheet discloses, that by the initial indorsement, dated 1 October 1974, over the command line of Brigadier General Grange, the charges were referred for trial to the general court-martial appointed by Court-Martial Convening Order Number 367, dated 24 July 1974. It also reflects that a copy of the charges was served on the appellant on 9 October 1974.

An offer to plead guilty to the charges is reflected in a pretrial agreement, dated 22 October 1974, signed by the appellant and his counsel, which is appended to the record of trial as Appellate Exhibit 1. In part here pertinent it states:

"I, Jerome L. Hooks, the accused in the General court-martial now pending have had an opportunity to examine the Charges preferred against me and all

statements of witnesses attached thereto. I have consulted with my defense counsel, Captain William L. Cheatham, and have been fully advised that I have a legal and moral right to plead not guilty to the Charges and Specifications under which I am about to be tried and to place the burden of proving my guilt beyond a reasonable doubt upon the prosecution.

.    .    .    .    .

This offer is made provided that the convening authority will agree to approve no sentence in excess of that indicated in Inclosure 1."

The aforementioned inclosure contains the following statement:

"I agree to plead guilty to the charges and specifications indicated in the pretrial agreement dated 22 October, subject to the conditions therein stated, provided that the convening authority will agree to suspend any sentence in excess of a Dishonorable Discharge, confinement at hard labor for 15 months, total forfeitures and reduction to the lowest enlisted grade."

This portion of the pretrial agreement was signed by the appellant, his counsel, and the trial counsel, Captain Rocco F. Meconi, who recommended its approval. Thereafter, on 25 October 1974, the offer to plead guilty was accepted and the agreement was signed by Major General John W. Vessey, Jr., who, as shown in a competent general order appended to the record, assumed command of Fort Carson and the 4th Infantry Division on 15 October 1974. Further examination of the charge sheet discloses that, by an indorsement, dated 25 October 1974, over the command line of Major General Vessey, the charges were referred for trial to the *special* court-martial appointed by Court-Martial Convening Order Number 400, dated 15 August 1974, with an indication that the imposition of a bad-conduct discharge was authorized. Also appended to the charge sheet is an additional indorsement, dated 29 October 1974, over the command line of Major General Vessey, which referred the case for trial to the general court-martial appointed by Court-Martial

Convening Order Number 413, dated 23 August 1974.

With the foregoing as a background, we next examine the record of the proceedings of the Article 39(a) session, which, as depicted in the record started at 0858 hours on the morning of 29 October 1974, and pertinent events which developed during the trial. As is customary, Captain Meconi, the trial counsel, announced that the court was convened "by Court-Martial Convening Order Number 400, dated 15 August 1974, Headquarters, Fort Carson and 4th Infantry Division, copies of which have been furnished to the military judge, counsel, and the accused, and which will be inserted at this point in the record." The record shows that, in the course of his providency inquiry, the military judge inquired and ascertained from the appellant, the trial counsel, and the trial defense counsel that each of them understood that the maximum punishment which could be imposed, based on the appellant's plea of guilty, was a dishonorable discharge, confinement at hard labor for thirty-five and one-half years, total forfeitures, and reduction. Additionally, as depicted in the record, after having examined the pretrial agreement, the military judge, upon inquiry, ascertained from the appellant that he understood that, pursuant to the agreement, the convening authority would not approve a sentence in excess of a dishonorable discharge, fifteen months confinement at hard labor and accessory penalties. Ultimately, the military judge sentenced the appellant to a bad-conduct discharge, confinement at hard labor for three years, total forfeitures and reduction.

■ Appellate defense counsel contend that the appellant was properly tried by a special court-martial, authorized to impose a bad-conduct discharge, and thus the court was without jurisdiction to adjudge a sentence which included confinement in excess of six months and any forfeitures in excess of two-thirds pay per month for six months. On the other hand, the Government contends that there was a clerical or administrative error in referral of the case and that the trial itself was a general court-martial and thus could adjudge the sentence.

It is deemed to be appropriate to note some general considerations at this point. It is generally true that military courts-martial must be convened strictly in accordance with the statute, but no provision of the Uniform Code of Military Justice directly and explicitly spells out the requirements and the form of reference of a charge to a court-martial for trial. However, the several provisions dealing with the convening authority indicate that the accused is "assured that the convening authority himself will . . . decide whether to refer the case for trial or not to do so, and, in the former instance, will determine the grade of court-martial—summary, special or general—by which it shall be tried." *United States v. Williams*, 6 U.S.C.M.A. 243, 245, 19 C.M.R. 369, 371 (1955). The convening authority's power to decide whether or not to refer a case for trial and to determine the grade of the court by which cases referred to trial shall be heard are judicial in nature and cannot be delegated to another. *United States v. Simpson*, 16 U.S.C.M.A. 137, 36 C.M.R. 293 (1966).

Article 30(b), Code, *supra*, provides in part as follows: "Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline . . . ." Thus, the formulation of the precise procedural steps for referral were logically left to the services. *United States v. Emerson*, 1 U.S.C. M.A. 43, 1 C.M.R. 43 (1951). Paragraph 33*j*, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

"Reference for trial. (1) *Manner of reference*. Charges are ordinarily referred to a court-martial for trial by means of the indorsement on the charge sheet. Although the indorsement is usually completed on all copies of the charge sheet, only the original need be signed. The indorsement may include any proper instructions; for instance, a direction that the charges be tried with certain other charges against the accused . . ., or in a common trial with other persons . . ., or that a capital case be treat-ed as not capital . . .; or, in a special court-martial, that the authorized maximum punishment does not include a bad-conduct discharge . . . . If, for any proper reason, it is desired to refer charges to a court different than that to which they were originally referred, the new reference is customarily accomplished by means of a new indorsement affixed to the charge sheet. In such a case the original indorsement is lined out and initialed."

■ In the instant case the critical and threshold question presented is whether, as asserted by appellate defense counsel, there was in fact a proper referral of the charges against the appellant to a special court-martial. A jurisdictional question having been raised, our inquiry may extend to matters outside the record. *United States v. Roberts*, 7 U.S.C.M.A. 322, 22 C.M.R. 112 (1956); *United States v. Dickenson*, 6 U.S.C. M.A. 438, 20 C.M.R. 154 (1955).

■ In his post-trial review, the staff judge advocate states that on 25 October 1974, due to the unavailability of Captain Juechter (trial counsel as designated by Court-Martial Convening Order Number 367), it was directed that the case of the appellant be heard by a general court-martial composed, in pertinent part, of Colonel Laray (military judge), Captain Cheatham (trial defense counsel) and, as a replacement for Captain Juechter, Captain Rocco Meconi, as trial counsel. He further states that, in compliance with this order a new indorsement was prepared and affixed to the charge sheet. This indorsement, he notes should have reflected that the charges were referred to the general court-martial convened by Court-Martial Convening Order Number 413, dated 23 August 1974, which was composed in accordance with the directive of the Commanding General. Rather, according to him, it was administratively incorrectly referred to a BCD special court-martial appointed by Court-Martial Convening Order Number 400 which was exactly the same as to military judge and counsel (the only active participants in the

trial, as the accused was tried by military judge, alone).

In addition to the foregoing, the following statement of Captain Meconi, the trial counsel, is included in the allied papers:

"This case was referred to a Special Court-Martial contrary to the belief of all the participants to the trial. As trial counsel I ordered, without authority, the case referred to Court-Martial Convening Order # 400 thinking I was merely re-referring the case to another General Court-Martial Convening Order with the correct counsel. This was completely an administrative error for which I take full responsibility. At no time did the convening authority order this case re-referred to a special court-martial contrary to his original decision to refer this to a general court-martial."

From a fair reading of the record, it is quite clear that trial of the appellant by a general court-martial was directed by competent authority—Brigadier General Grange. That trial by a general court-martial was also intended by Major General Vessey is implicit in his action of accepting the appellant's offer to plead guilty, the responsibility for such action having devolved upon him as the convening authority at the time then material. There is nothing of record which would accommodate an inference that he withdrew the charges and directed that they be tried by a lesser court. Rather, it appears that the trial counsel, in exercising the ministerial responsibility of causing an indorsement to be affixed to the sheet, erred in directing referral of the charges to a special rather than a general court-martial. Under these circumstances, we are constrained to conclude that the referral, as indicated, did not constitute a jurisdictional defect. *Cf. United States v. Simpson, supra.* Further, the evidence irrefutably demonstrates that all of the parties viewed and treated the proceedings as being a trial by general court-martial, and the appellant was not, therefore, in any way prejudiced.

The findings of guilty and the sentence are affirmed.

Judge DeFORD concurs.

Judge COOK absent.